In the Matter of CANISIUS COLLEGE OF BUFFALO, Respondent, v. EWALD B. NYQUIST, as Commissioner of Education of the State of New York, Appellant.

Third Department, April 27, 1971.

*Robert D. Stone* and *John P. Jehu* for appellant.

*Charles S. Desmond* and *Charles J. McDonough* for respondent.

STALEY, JR., J. This is an appeal from a judgment of the Supreme Court at Special Term, entered July 15, 1970 in Albany County in a proceeding under article 78 of the CPLR which directed respondent, Commissioner of Education, to grant and approve the application of petitioner for State aid pursuant to section 6401 of the Education Law.

Chapter 677 of the Laws of 1968 enacted section 6401 of the Education Law entitled "State aid for certain non-public institutions of higher learning". This statute provides that the Commissioner of Education is authorized for each annual period commencing July 1, 1969 to pay amounts of State aid to any private institution of higher learning within the State which meets the qualifications provided by the section.

Pursuant to the provisions of section 6401 petitioner, Canisius College of Buffalo, New York, applied for State aid and in November, 1968 filed its statement concerning eligibility for State aid. By letter dated July 22, 1969 the Commissioner tentatively denied the application. Thereafter, the Commissioner held a conference with representatives of petitioner on September 10, 1969 and, by letter dated December 31, 1969, the Commissioner determined that petitioner was not eligible for State aid "under the relevant provisions of the New York State Constitution". It is conceded that petitioner qualified for State aid in all respects with the exception of the provisions of paragraph d of subdivision 2 of section 6401 which states as follows: "The institution must be eligible for state aid under the provisions of the constitution of the United States and the constitution of the state of New York."

The main issue on this appeal is whether or not the Constitution of the State of New York prohibits State aid to petitioner as provided by section 6401. In the letter denying aid to petitioner the Commissioner stated as follows: "While my conclusion is based not on any single factor, but rather upon my understanding of the institution as a whole, I have noted that the College states, in its current catalog, that 'The Commitment of Canisius College to the pursuit of wisdom involves finally strong religious convictions, a dedication to Christ and

His teachings '; five of the twelve trustees, the president of the College, one-third of the administrative officers and twenty percent of the faculty are members of the sponsoring religious order; all students who profess adherence to the Roman Catholic faith are required to complete twelve credit hours in courses in religious studies; college-sponsored religious services are exclusively Roman Catholic in style, all college chaplains are members of the sponsoring religious order, and the two religious organizations on campus are Roman Catholic related.''

Section 3 of article XI of the Constitution of New York (the so-called Blaine Amendment) provides that the State shall not use public moneys in aid '' of any school or institution of learning wholly or in part under the control or direction of any religious denomination, or in which any denominational tenet or doctrine is taught ''. Section 6401 of the Education Law is a delegation of authority to the Commissioner to determine which private institutions of higher education are eligible for State aid under the State and Federal Constitutions. In the present case, the Commissioner has denied aid to petitioner on the basis of the Blaine Amendment. The question, therefore, is whether that determination was arbitrary and capricious.

Section 3 of article XI contains two operative clauses: (1) '' any * * * institution of learning wholly or in part under the control or direction of any religious denomination ''; and (2) '' any * * * institution of learning * * * in which any denominational tenet or doctrine is taught ''. Although the Commissioner alleged in the third affirmative defense in his answer that the Society of Jesus which founded petitioner was an integral part of the Roman Catholic Church, the Commissioner at Special Term apparently abandoned the defense based on the '' control '' provisions of the Blaine Amendment to the effect that aid was prohibited to institutions '' under the control or direction of any religious denomination ''. We are, therefore, limited to a review of the Commissioner's determination that petitioner should be denied State aid because it is an institution '' in which any denominational tenet or doctrine is taught ''.

Petitioner was chartered by the State in January, 1883 as an institution of higher learning. Although founded by priests of the Society of Jesus, it has never operated as an agency of the Catholic Church or its hierarchy, or of any other church or denomination, nor has it ever received any financial support from any church. On October 20, 1968 it petitioned the Board of Regents to increase the number of trustees to 25 of which a majority will be laymen, and a minority will be members of the

Society of Jesus. There is no policy of the petitioner requiring that faith or creed shall be relevant to the selection of administrative officers, the selection of faculty members, the admission of students or the awarding of scholarships or other financial assistance to students. There is no required attendance at any religious service.

Petitioner has a department of religious studies which offers as a strictly academic discipline, courses in theology, history of religion, liturgies of worship in the various denominations, religious thought Christian and Jewish, and religion in various literatures. The faculty of the department of religious studies includes Protestant, Jewish and Catholic professors. No degrees are awarded in the field of religion, and no denominational tenet or doctrine is taught in the manner of dogmatism or indoctrination.

An analysis of the purpose and practice of the petitioner in the field of education leads to the conclusion that it does not teach any religious doctrine in the Blaine Amendment sense of indoctrination. A finding that petitioner comes within the proscription of the Blaine Amendment is arbitrary and capricious because religious studies are taught more as an academic discipline than as a specific denominational tenet.

One apparent principle upon which the Blaine Amendment is based is that the State should not use its powers and resources to further the cause of one particular religious sect. (*Board of Educ. of Cent. School Dist. No. 1* v. *Allen,* 20 N Y 2d 109, affd. 392 U. S. 236; *Matter of Zorach* v. *Clauson,* 303 N. Y. 161, affd. 343 U. S. 306.) The grant of State aid to a college which requires religious courses, but does not restrict them to one particular religion, does not violate that principle. '' The New York State Constitution prohibits the use of public funds for a particular purpose; that is, aiding religiously affiliated schools. Certainly, not every State action which might entail some ultimate benefit to parochial schools is proscribed. Examples of co-operation between State and church are too familiar to require cataloguing here. As we said, although in a different context: ' It is thus clear beyond cavil that the Constitution does not demand that every friendly gesture between church and State shall be discountenanced. The so-called '' wall of separation '' may be built so high and so broad as to impair both State and church, as we have come to know them '. (*Matter of Zorach* v. *Clauson,* 303 N. Y. 161, 172, affd. 343 U. S. 306.) '' (*Board of Educ. of Cent. School Dist. No. 1* v. *Allen, supra,* pp. 115–116.)

It is agreed that most, if not all, institutions of higher learning in New York State offer courses in religion, and it is conceded that State aid under section 6401 has been approved for such institutions. To literally interpret the provision of the Blaine Amendment that " any   *   *   *   institution   *   *   * in which *any* denominational tenet or doctrine is taught " is prohibited from State aid, would be absurd, since it would eliminate from State aid almost all private institutions, as well as some of the schools of the State University. The reasonable interpretation of this portion of the Blaine Amendment is that State aid should not be given to institutions which teach tenets as doctrine of a particular religious denomination to the exclusion of other denominations. Under this interpretation, petitioner is not proscribed from receiving State aid.

Although the Commissioner denied State aid to the petitioner solely on the basis that it was not eligible under the provisions of the New York State Constitution, nonetheless, to qualify, it must also be eligible under the provisions of the Federal Constitution. The primary purpose of section 6401 is not to help any religious group, but to assist the private colleges in providing better quality education for its students. This is a proper secular objective which constitutes the primary purpose and effect of the legislation.

Section 6401 was enacted as the result of the report of The Select Committee on the Future of Private and Independent Higher Education in New York State which committee was headed by McGeorge Bundy and has been referred to as the " Bundy Report ". It is stated in that report at page 48 as follows: " The democratic argument for a single comprehensive public school system in each community simply does no apply, in our view, at the level of the four-year college and the university. The clear-cut tradition of this country is that there should be a wide variety of colleges and universities, supported in a wide variety of ways. Moreover, there has been a general recognition for, many generations that privately controlled colleges and universities — if they are good — serve the public interest in a wider and deeper way than most private elementary and secondary schools.   *   *   *   The service of the schools is almost entirely a service through the students to whom they may offer unusual educational advantages. The service of the colleges and universities is wider — including as it does the learning of the faculties, the public value of their libraries, the professional service of the lawyers, doctors and engineers they train, and their general civic meaning as major institutions serving

the community as a whole. We are far from concluding that all religious institutions should have state assistance. * * * But we firmly reject the wider argument that all institutions of higher education having any religious connections should be ineligible.''

If a law's primary purpose and effect is to benefit the public welfare, and to promote some legitimate interest not related to religion, its application should be upheld, even though persons of different religious persuasion benefit thereby or some incidental effect enures to a religious institution.

In the case of *Everson* v. *Board of Educ.* (330 U. S. 1), a New Jersey statute was upheld as constitutional, which provided for payments to parents of parochial school children in reimbursement for the cost of transporting their children to parochial schools. The court, holding that the establishment clause cannot be applied to deny the benefit of a public welfare program to individuals because of religion, stated as follows (p. 16): '' New Jersey cannot consistently with the ' establishment of religion ' clause of the First Amendment contribute tax-raised funds to the support of an institution which teaches the tenets and faith of any church. On the other hand, other language of the amendment commands that New Jersey cannot hamper its citizens in the free exercise of their own religion. Consequently, it cannot exclude individual Catholics, Lutherans, Mohammedans, Baptists, Jews, Methodists, Non-believers, Presbyterians, or the members of any other faith, *because of their faith, or lack of it,* from receiving the benefits of public welfare legislation.''

In *Board of Education* v. *Allen* (392 U. S. 236) the court sustained a New York statute which required the State to lend textbooks free of charge to all children in private sectarian and nonsectarian schools. The court recognized that ''*Everson* and later cases have shown that the line between state neutrality to religion and state support of religion is not easy to locate. ' The constitutional standard is the separation of Church and State. The problem, like many problems in constitutional law, is one of degree.' *Zorach* v. *Clauson,* 343 U. S. 306, 314 (1952).'' (p. 242). The court further in determining the validity of the statute utilized the secular purpose and primary effect test, first enunciated in *Abington School Dist.* v. *Schempp* (374 U. S. 203) where it stated at page 222 '' to withstand the strictures of the Establishment Clause there must be a secular legislative purpose and a primary effect that neither advances nor inhibits religion.''

The express purpose of section 6401 is the furtherance of educational opportunities for students of private institutions of

higher learning. The determination of whether petitioner should be eligible for State aid under the provisions of the Federal Constitution should turn on whether such aid would result in establishing religious beliefs or practices, or have the effect of doing so. Under the facts here, such aid to petitioner would result in neither the advancement nor the inhibition of religion, and the statute meets the secular purpose and primary effect test of constitutionality.

The grant of State aid to petitioner under the provisions of section 6401 would not be violative of the Federal and State Constitutions. (Cf. *Walz* v. *Tax Comm.*, 397 U. S. 664; *McGowan* v. *Maryland*, 366 U. S. 420; *Cochran* v. *Board of Educ.*, 281 U. S. 370; *Tilton* v. *Finch*, 312 F. Supp. 1191.)

The judgment should be affirmed.

HERLIHY, P. J. (concurring in the result). The questions presented in the present case are extremely limited. Section 6401 of the Education Law provides for the payment of State funds to institutions " of higher education " upon application by such an institution which meets certain specified requirements. Among other things the statute requires that the grant of such aid not be in violation of the New York State Constitution.

The statute does not provide for the manner in which an applicant is to demonstrate that it meets the various requirements except possibly insofar as it provides in subdivision 5 thereof that applicants must submit such reports as the appellant (Commissioner) may require. (See 8 NYCRR 150.1, 150.2.) The applicant submitted to the Commissioner a questionnaire — application as required for the purpose of obtaining State aid. The Commissioner denied the request for State aid upon the basis of the application and such information as he then had before him upon the ground that the applicant was prohibited from receiving such aid pursuant to " the relevant provisions of the New York State Constitution ". In the process of this article 78 proceeding the basis of the Commissioner's refusal to pay over State aid to the applicant has been narrowed to the finding by the Commissioner that the applicant falls within the proscription of section 3 of article XI of the New York State Constitution as being an institution " in which any denominational tenet or doctrine is taught ".

The limited issue before this court is whether or not the Commissioner could refuse the payment of State aid upon such information as was before him at the time of application. It should be noted that the letter from the Commissioner to the applicant dated December 31, 1969, refers to a meeting " with key mem-

bers of the Education Department staff ", and which apparently is some of the " information " upon which the Commissioner relies and is not part of the present record.

Ordinarily, the issue of whether or not the Constitution of this State would prohibit the granting of State funds to it would be judicial in nature and would require a full disclosure of all of the relevant facts concerning the institution. Presumptively such an issue could be fully litigated in an action seeking a declaratory judgment. (Cf. *Board of Educ. Cent. School Dist. No. 1* v. *Allen*, 20 N Y 2d 109.) However, the Commissioner must of necessity pass upon the prima facie qualification of applicants based upon such information as is submitted either with the application or in support thereof. The Commissioner in his brief alleges that the " denial of aid must be sustained as based on the salient statements of petitioner which are before the Court ". However, the application and the present record are inadequte to support the determination of the Commissioner that the applicant does not in fact qualify for State aid as was implicitly found by Special Term. Accordingly, it appears that the Commissioner exceeded his power insofar as he denied the application for State aid under the circumstances in the present case. The Commissioner does not contend that any further proceedings are necessary in regard to this application for State aid and, accordingly, the direction that the appropriate State aid be paid forthwith should be affirmed.

The present proceeding does not raise any issues under the Federal Constitution.

I concur in the affirmance solely on the basis that the grounds invoked by the Commissioner to deny the application for aid are inedaquate and, therefore, arbitrary and capricious and pass on no other issue which might or might not have been raised in an appropriate proceeding.

REYNOLDS and GREENBLOTT, JJ., concur with STALEY, JR., J.; HERLIHY, P. J., concurs in result in a separate opinion, in which REYNOLDS and GREENBLOTT, JJ., concur. SWEENEY, J., concurs in the result.

Judgment affirmed, without costs.